Case No. 18-72684

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

IDAHO CONSERVATION LEAGUE,

*Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, and
ANDREW WHEELER, Administrator of the U.S. EPA,

*Respondents*.

Petition for Review
Under the Clean Water Act

**PETITIONER IDAHO CONSERVATION LEAGUE'S REPLY BRIEF**

Mark A. Ryan (WSBA # 18279)
RYAN & KUEHLER PLLC,
P.O. Box 3059
Winthrop, Washington 98862
(509) 996-2617

Keith Cohon (WSBA #15103)
6210 Sycamore Ave.
Seattle, Washington 98107
(206) 783-4772

Laurence ("Laird") J. Lucas
(ISB #4733)
Bryan Hurlbutt (ISB # 8501)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024

*Attorneys for Petitioner Idaho Conservation League*

# TABLE OF CONTENTS

Page

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

I.  ICL HAS STANDING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    A.  The CWA Determines the Timing of ICL's Petition. . . . . . . . .  2

    B.  ICL Has Demonstrated Article III Standing . . . . . . . . . . . . . .  3

    C.  ICL's Declarations Satisfy Article III. . . . . . . . . . . . . . . . . . .  5

II.  EPA IMPROPERLY APPROVED THE IDAHO CRIMINAL
    *MENS REA* STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

    A.  EPA Cannot Rely on Regulations Superseded by the CWA. . .  12

    B.  EPA's New Interpretation of 40 C.F.R. §§ 123.27(a)(3)
        and (b) is Arbitrary and Capricious. . . . . . . . . . . . . . . . . . . .  14

    C.  The Court Should Not Defer to EPA under the New
        *Auer* Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

III.  IDAHO'S STATUTE OF LIMITATIONS DOES NOT MEET
     THE CWA'S ADEQUACY REQUIREMENT. . . . . . . . . . . . . . . . . .  18

    A.  ICL Did Not Waive Its Claim . . . . . . . . . . . . . . . . . . . . . . . .  19

    B.  The Record Shows That the Limitation Period is too Short
        for Idaho to Timely Develop Enforcement Cases. . . . . . . . . . .  20

    C.  ICL's Challenge Is Inherently Forward-Looking. . . . . . . . . . .  22

    D.  EPA Misinterprets the Trigger Date for Enforcement . . . . . .  23

IV.    EPA WRONGLY APPROVED IDEQ TO RUN THE
       CAFO PROGRAM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

# TABLE OF AUTHORITIES

Page

Federal

*Akiak Native Community v. EPA*, 625 F.3d 1162
  (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

*Alaska Ctr. for the Environment v. Browner*, 20 F.3d 981
  (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6, 9-11

*American Forest and Paper Ass'n v. EPA*, 137 F.3d 291
  (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

*Auer v. Robbins*, 519 U.S. 452 (1997) . . . . . . . . . . . . . . . . . . . . . .     16

*Baker v. U.S. Dept. of Agriculture*, 928 F. Supp. 1513
  (D. Idaho 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13, 18

*Barnum Timber Co. v. EPA*, 633 F.3d 894 (9th Cir. 2011) . . . . . .     8

*Bennett v. Spear*, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . .     10

*Bonnichsen v. United States*, 367 F.3d 864 (9th Cir. 2004). . . . . .     10

*Citizens for a Better Environment v. EPA*, 596 F.2d 720
  (7th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

*Christensen v. Harris County*, 529 U.S. 576 (2000) . . . . . . . . . . .     17

*Defenders of Wildlife v. EPA*, 420 F.3d 946 (9th Cir. 2005),
  *rev'd on other grounds,* 551 U.S. 644 (2007) . . . . . . . . . . .     6, 9, 11

*Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141
  (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6, 8

*Friends of the Earth v. Laidlaw Envtl. Services*, 528 U.S. 157
  (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6, 8

*Great Basin Mine Watch v. Hankins*, 456 F.3d 955 (9th Cir. 2006)     19, 20

*Idaho Sporting Cong. v. Rittenhouse*, 305 F.3d 957 (9th Cir. 2002)    19, 20

*Island Coal Co. v. Bryan*, 937 F.3d 738 (6th Cir. 2019) . . . . . . . . .    19

*J.L. v. Cissna*, 374 F. Supp. 3d 855 (N.D. Ca. 2019) . . . . . . . . . .    13, 18

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) . . . . . . . . . . . . . . . . . . . . .    16-18

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) . . . . . . . . . . . . . . . . . . . . . .    15

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) . . . . . . . . . .    3

*Massachusetts v. EPA*, 549 U.S. 497 (2007) . . . . . . . . . . . . . . . .    10

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) . . . . . . . . .    9

*Natural Resources Defense Council v. EPA*, 542 F.3d 1235
    (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6, 7, 10-11

*Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002) . .    9

*Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846
    (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6, 8

*Peabody Coal Co. v. Train*, 518 F.2d 940 (6th Cir. 1975). . . . . . .    3

*Sierra Club v. Morton*, 405 U.S. 727 (1972) . . . . . . . . . . . . . . . .    6

*Tablada v. Thomas*, 533 F.3d 800 (9th Cir. 2008) . . . . . . . . . . . .    22

*United States v. Hanousek*, 176 F.3d 1116 (9th Cir. 1999),
    *cert. denied*, 528 U.S. 1102 (2000) . . . . . . . . . . . . . . . . . . .    13, 17

*Washington Environmental Council v. Bellon*, 732 F.3d 113
    (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

*Waste Action Project v. Draper Valley Holdings LLC*,
    49 F.Supp.3d 799 (W.D. Wash. 2014) . . . . . . . . . . . . . . . .    6

ICL REPLY BRIEF --        

*WildEarth Guardians v. DOJ*, 752 Fed. Appx. 421
    (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

State

*Nancy Lee Mines, Inc. v. Harrison*, 59 Idaho 546, 511 P.2d 828
    (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## Statutes

33 U.S.C. § 1251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.3

33 U.S.C. § 1319(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.3, 15

33 U.S.C. § 1342(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 n.3, 23

33 U.S.C. § 1342(n). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

33 U.S.C. § 1342(n)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26 n.7

33 U.S.C. § 1369(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 19

## Regulations

40 C.F.R. § 123.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-27

40 C.F.R. § 123.27. . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 12 n.3,
    14

40 C.F.R. § 123.27(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

40 C.F.R. § 123.27(a)(3)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15,
    17

40 C.F.R. § 123.27(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14-17

ICL REPLY BRIEF --       v

## Other Authorities

45 Fed. Reg. 33,377, 33,381 (May 19, 1980) . . . . . . . . . . . . . . . . .   16 n.4

48 Fed. Reg. 14146 (Apr. 1, 1983) . . . . . . . . . . . . . . . . . . . . . . . . .   13

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedures Act |
| CWA | Clean Water Act |
| EPA | United States Environmental Protection Agency |
| EPA Br. | EPA Response Brief |
| ER | Excerpt of Record |
| FTE | Full-time equivalent employee |
| ICL | Idaho Conservation League |
| ICL Op. Br. | ICL Opening Brief |
| IDAHO Br. | Idaho Response Brief |
| IDEQ | Idaho Department of Environmental Quality |
| IPDES | Idaho Pollutant Discharge Elimination System |
| ISDA | Idaho State Department of Agriculture |
| NPDES | National Pollutant Discharge Elimination System |
| RTC | Response to Comments |
| SER | Supplemental Excerpt of Record |

## INTRODUCTION

Petitioner Idaho Conservation League ("ICL") showed in its opening brief and supporting declarations that EPA committed three discrete errors in approving the Idaho Pollutant Discharge Elimination System ("IPDES") program which injure the interests of ICL and its members, and requested this Court remand without vacatur so those errors might be corrected. *See* ECF Nos. 30 through 30-2.

Respondent Environmental Protection Agency ("EPA"), and Intervenors State of Idaho ("Idaho"), Idaho Association of Commerce and Industry, and Association of Idaho Cities all make nearly identical arguments in asserting this Court should either dismiss ICL's Petition for Review for lack of Article III standing, or affirm on the merits. *See* ECF Nos. 37, 42, 44-45. Notably, none of them disagree that remand without vacatur is an appropriate remedy, if ICL prevails on any of its challenges.

The Court should reject the standing objections, as explained below, because the Clean Water Act ("CWA") authorizes ICL's Petition for Review and ICL has adequately documented how EPA's approval of the legally-flawed IPDES program harms ICL and its members under numerous CWA cases.

On the merits, EPA and Intervenors seek to persuade the Court that Idaho somehow corrected the deficiencies in the IPDES program, which EPA itself raised during the review process. Those assertions are not accurate, as detailed

ICL REPLY BRIEF --                          1

below, and each of the three errors identified in ICL's Opening Brief violate the CWA regulations setting minimum requirements for EPA to authorize state NPDES programs.

Accordingly, the Court should grant ICL's Petition for Review, hold that EPA violated the CWA and APA in the ways identified by ICL, and remand without vacatur to allow adequate time for these flaws to be corrected.

## ARGUMENT

### I.     ICL HAS STANDING TO BRING THIS PETITION FOR REVIEW.

### A.     The CWA Determines the Timing of ICL's Petition.

EPA first argues that ICL's challenges are "speculative," asserting that ICL must wait until the Idaho Department of Environmental Quality ("IDEQ") has made permitting or enforcement decisions under the challenged defects in the IPDES program. *See* EPA Br. at 1, 21-25. This argument disregards the express language of the CWA.

Congress, through the CWA, established that "any interested person" may challenge EPA's authorization of a state NPDES program by filing a petition for review with the relevant court of appeals within 120 days of the approval. *See* 33 U.S.C. § 1369(b)(1). The courts of appeal have exercised that review authority over other EPA authorization decisions without suggesting that a challenging party could—much less has to—wait until the authorized state program has been

implemented. *See, e.g., Akiak Native Comm. v. EPA*, 625 F.3d 1162 (9th Cir. 2010) (affirming EPA authorization); *Citizens for a Better Environment v. EPA*, 596 F.2d 720 (7th Cir. 1979) (reversing EPA authorization). *See also Peabody Coal Co. v. Train*, 518 F.2d 940 (6th Cir. 1975) (dismissing where petition for review was not timely filed, citing legislative history showing that Congress sought to protect environment by imposing short deadlines for review petitions under § 1369(b)(1)).

This exclusive statutory method for seeking judicial review of EPA's IPDES approval means that ICL could not wait months or years to see how IDEQ actually implements the IPDES program, and then seek to challenge it later. Moreover, as in the cases above, ICL's challenges to the IPDES approval are primarily legal in nature, and are similar to EPA's own concerns about defects in the IPDES application. *See* ICL Opening Brief at 8-10 (citing record). The Court must reject EPA's argument asking it to disregard the plain language of the CWA requiring ICL's Petition for Review to be filed before Idaho has implemented IPDES.

### B.    ICL Has Demonstrated Article III Standing.

Although § 1369(b)(1) allows ICL, as an "interested party," to seek judicial review from this Court, ICL still must demonstrate its Article III standing by presenting sufficient evidence showing the three elements of standing: (1) injury in fact, that is (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of*

*Wildlife,* 504 U.S. 555, 560 (1992). ICL met these requirements by filing the Oppenheimer and Nykiel declarations with its opening brief. *See* ECF Nos. 30-2 & 30-3. Contrary to EPA's and Intervenors' arguments, those declarations along with the Administrative Record[1] confirm ICL's Article III standing.

Specifically, ICL is Idaho's largest conservation organization, representing around 30,000 supporters, including members who rely on, use, and care deeply about Idaho's rivers, lakes, and other waters. Oppenheimer Decl. ¶ 4. To carry out its mission to protect Idaho's environment, ICL devotes substantial resources to water quality protection and improvement throughout Idaho. *Id.* ¶ 20. ICL's declarants regularly visit specific waters throughout Idaho for both professional reasons and for personal recreational, aesthetic, and other enjoyment. But they have avoided activities—and their experiences have been degraded—due to water pollution from point sources subject to CWA permitting. *Id.* ¶¶ 36–45; Nykiel Decl. ¶¶ 15–20. ICL and its members are harmed when pollutants are discharged without complying with the CWA's protections because pollutants harm ICL's mission to protect Idaho's waters and prevent or degrade their members' activities on these waters. *Id.*

---

[1] EPA's own analyses and questions about the inadequacy of the IPDES program, as reflected in the Administrative Record, support and confirm ICL's standing declarations. *See, e.g.,* ER 7–13, 40–43, 51–61, 71–96.

EPA's approval of the IPDES program poses imminent and likely injury to ICL and its members because the IPDES program fails to protect Idaho waters from point source pollution to the degree required by the CWA. *Id.* Increased point source pollution under the IPDES program will likely lead to a further degradation of Idaho's water quality and the recreational values that ICL seeks to protect and its members enjoy. *Id.*

EPA's approval of the IPDES program harms ICL because it is inadequate as a statewide water pollution control program in the three ways challenged here. Far from providing "no specific facts or evidence," Idaho Br. 19, or only "rank speculation," EPA Br. 24, ICL's declarations show CAFOs are a significant source of the nutrient pollution in the Snake River that harms ICL's members, and there is good reason to expect ISDA to laxly regulate CAFOs. *See* Oppenheimer Decl. ¶¶ 22–43, 46–47 & Exhs. A–F. The shortcomings restricting criminal and civil enforcement plausibly exacerbate ICL's injuries because of IPDES's short statute of limitations, high *mens rea* standard, and the decreased deterrent effect of IPDES caused by these inadequacies. *Id.*

## C.    *ICL's Declarations Satisfy Article III.*

Based on declarations similar to ICL's, the Supreme Court and this Court have previously held that conservation groups have standing in CWA cases, including cases against EPA for failing to properly administer the CWA. *See*

ICL REPLY BRIEF --                              5

*Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–88 (2000);

*Nat. Res. Def. Council v. EPA*, 542 F.3d 1235, 1244–48 (9th Cir. 2008) ("*NRDC*");

*Defenders of Wildlife v. EPA*, 420 F.3d 946, 956–58 (9th Cir. 2005), *rev'd on other*

*grounds and remanded sub nom. National Ass'n of Home Builders v. Defenders of*

*Wildlife,* 551 U.S. 644 (2007); *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981,

984–86 (9th Cir. 1994) ("*ACE*").  ICL's declarations satisfy all three elements of

Article III standing under these and other cases, as discussed below.

      *i.*    *Injury in Fact*

    The Supreme Court has held that "environmental plaintiffs adequately allege

injury in fact when they aver that they use the affected area and are persons 'for

whom the aesthetic and recreational values of the area will be lessened' by the

challenged activity." *Laidlaw*, 528 U.S. at 183 (*quoting Sierra Club v. Morton*, 405

U.S. 727, 735 (1972)). "The alleged injury need not be large: an actual and genuine

loss, even if a trifle, will suffice for standing purposes." *Waste Action Project v.*

*Draper Valley Holdings LLC*, 49 F. Supp. 3d 799, 802 (W.D. Wash. 2014).

"[N]othing necessitates a showing of existing environmental harm," and "an

increased risk of harm can itself be injury in fact for standing." *Ocean Advocates v.*

*U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005) (*citing Ecological*

*Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000)).

This Court thus found Article III injury in *ACE*, where plaintiffs sought to compel EPA to issue CWA-required pollution limits for Alaskan waters, based on declarations from plaintiff group members "adversely affected by the inadequate water quality of a representative number of waters throughout the state." 20 F.3d at 985. This Court also found injury in *NRDC*, based on member declarations showing they "used particular waterways for aesthetic and recreational purposes" and their "use and enjoyment of those waterways has been diminished" by the flawed CWA regulation. 542 F.3d at 1245.

Here, like in *ACE* and *NRDC*, ICL and its members are affected by illegal pollution discharges into Idaho waters. ICL's members drink from, fish, and recreate in and around specific Idaho waters—such as the Snake River and Lake Pend Oreille—that are being polluted by point sources subject to NPDES permitting. Illegal pollution harms ICL and its members by degrading their recreational and aesthetic experiences on and around Idaho's waters or by preventing them from engaging in these activities. Nykiel Decl. ¶¶ 5, 11–19; Oppenheimer Decl. ¶¶ 13–15, 19, 36–43.

## ii.  Causation

Moreover, ICL's injuries are "fairly traceable" to EPA's approval of the IPDES program under the second Article III requirement, causation. ICL's members declare they are harmed by pollution from point sources that violate the

CWA's NPDES permitting requirements. *See* Oppenheimer Decl. ¶¶ 13–15, 19, 36–43. Weaker state standards will lead to more pollution. EPA's approval of the IPDES program will, therefore, further injure ICL and its members because it fails to protect Idaho's waters at the level required by the CWA. *Id.*

To be "fairly traceable," the causal connection between the injury and the challenged action "cannot be too speculative, or rely on conjecture about the behavior of other parties, but need not be so airtight . . . as to demonstrate that the plaintiffs would succeed on the merits." *Ocean Advocates*, 402 F.3d at 860 (*quoting Ecological Rights*, 230 F.3d at 1152). A plaintiff need not show that the challenged action is the "sole source" of its injuries, and "need not eliminate any other contributing causes to establish its standing." *Barnum Timber Co. v. EPA*, 633 F.3d 894, 901 (9th Cir. 2011).

EPA and Idaho argue that decreased deterrence is too speculative to cause water pollution. *See* EPA Br. 21–23; Idaho Br. 17. For this assertion, they rely on an unpublished, non-CWA decision, *WildEarth Guardians v. DOJ*, 752 Fed. Appx. 421 (9th Cir. 2018), and ignore the Supreme Court's *Laidlaw* decision, 528 U.S. at 180–88. *Laidlaw* held that penalties authorized in CWA citizen suits provide "a deterrent effect that made it likely, as opposed to merely speculative, that the penalties would redress [plaintiffs'] injuries by abating current violations and preventing future ones." 528 U.S. at 187. Here, it is likely, and not merely

speculative, that the IPDES program—which deprives Idaho of civil and criminal enforcement opportunities—diminishes the deterrent effect recognized in *Laidlaw*.

EPA and Idaho argue ICL must provide even more detailed facts tying specific events under IPDES to specific injuries. But EPA's approval of a state program, like a petition for review under 33 U.S.C. § 1369(b)(1), requires a forward-looking analysis of how a state program may or may not comply with minimum CWA requirements. Moreover, the statutory requirement to file a petition for review within 120 days of program approval makes it difficult if not impossible to cite to examples of actual harm that have already occurred in a program that has not yet been fully implemented. In any event, such a precise showing is not required by this Court's precedents in cases involving statewide CWA regulations. *See, e.g., Defenders*, 420 F.3d at 956-58.

The chain of causation here is just as strong as in *ACE*, where this Court found that conservation groups had standing. *See* 20 F.3d at 982–83. As in *ACE*, ICL is attempting here to ensure provisions of the CWA protecting water quality are enforced. Although each provision is simply one link in a causal chain and there may be other factors that influence the quality of Idaho's waters, "[a] causation chain does not fail simply because it has several 'links,' provided those links are not 'hypothetical or tenuous' and remain 'plausib[le].'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (*quoting Nat'l Audubon Soc., Inc. v.*

*Davis*, 307 F.3d 835, 849 (9th Cir. 2002)). *See also NRDC,* 542 F.3d at 1244–48

(conservationists had standing to compel EPA to promulgate CWA guidelines and

standards based on declarations similar to those submitted by ICL).

Instead of addressing these CWA standing cases, EPA and Idaho rely on a

climate change case, *Washington Environmental Council v. Bellon*, 732 F.3d 1131

(9th Cir. 2013). That case held that, because climate change was the cumulative

result of greenhouse gas emissions around the world, the plaintiffs were unable to

show that their localized injuries were fairly traceable to, or redressable by, EPA's

failure to require greenhouse gas emission limits. *Id. at* 1143–44. Here, in contrast,

ICL's declarations show localized injuries traceable to point source pollution,

subject to NPDES program permitting. ICL's declarations proffer uncontradicted

evidence showing they will be harmed by pollution caused, at least in part, by lost

civil and criminal enforcement authority and inadequate CAFO regulation under

IPDES. ICL has thus shown Article III causation.

    *iii.*    *Redressability*

A plaintiff meets the redressability requirement if its injury can likely be

redressed by a favorable decision. *Bonnichsen v. United States*, 367 F.3d 864, 873

(9th Cir. 2004) (*citing Bennett v. Spear*, 520 U.S. 154, 167 (1997). It is sufficient

to show that the requested remedy would "slow or reduce" the harm.

*Massachusetts v. EPA*, 549 U.S. 497, 525 (2007).

*Defenders*, *ACE*, and *NRDC* all support finding redressability here. In *Defenders*, this Court explained "the alleged injuries would be redressable by a court order vacating or mitigating the EPA's transfer decision" because "protections accorded by the [ESA] would then come back into operation." 420 F.3d at 957. Similarly, here, granting ICL's requested relief would mitigate EPA's decision to authorize the Idaho program by giving EPA and Idaho the opportunity to bring the IPDES program into compliance with the CWA.

In *ACE*, EPA argued conservationists' injuries were not redressable because even if EPA were required to establish the TMDLs, "the actual quality of Alaskan waters will depend in part upon discretionary acts of the state of Alaska with respect to non-point source pollution." *ACE*, 20 F.3d. at 984. This Court rejected EPA's argument as "untenable," finding that Alaska's "third party involvement does not render the relief sought completely speculative," because "Congress and the EPA have already determined that establishing TMDLs is an effective tool for achieving water quality standards in waters impacted by non-point source pollution." *Id.* at 984–85. Similarly, here, Congress, in enacting the CWA and creating the NPDES program, determined that civil and criminal enforcement, and administration of CWA permitting only by authorized state agencies, is the appropriate means for ensuring compliance with the NPDES program. *See id.*;

ICL REPLY BRIEF --                    11

*NRDC*, 542 F.3d at 1246. Therefore, here, as in *ACE* and *NRDC*, ICL's organizational and member injuries are redressable.[2]

In summary, ICL has demonstrated its Article III standing, and the Court should address the merits of ICL's Petition for Review.

## II. EPA IMPROPERLY APPROVED THE IDAHO CRIMINAL *MENS REA* STANDARD.

EPA argues at length that CWA § 402(b) does not require state NPDES standards match federal standards. EPA Br. 25–29. EPA ignores the fact that its regulations specifically require that the state *mens rea* standard be no stricter than EPA's. 40 C.F.R. § 123.27(b).[3] EPA must adhere to its regulations.

### A. EPA Cannot Rely on Regulations Superseded by the CWA.

EPA argues that ICL is facially challenging 40 C.F.R. § 123.27(a)(3)(ii), and that such a challenge is time-barred. EPA Br. 40–41. However, ICL is not challenging 40 C.F.R. § 123.27 and does not seek an order overturning or vacating

---

[2] Idaho also argues ICL's injuries are not redressable because there is no guarantee that the flaws in the IPDES program would be fixed during the two-year remand that ICL seeks. Idaho Br. 20–21. But, if the deficiencies are not addressed within the two-year remand, ICL reserves the right to ask this Court to vacate EPA's approval and remand the entire program back to EPA. Reinstating the federal NPDES program in Idaho would redress ICL's injuries caused by the unlawful IPDES approval.

[3] When EPA promulgated 40 C.F.R. § 123.27, it cited as its statutory authority 33 U.S.C. §1251 *et. seq.*, not 33 U.S.C. § 1342(b)(7). EPA thus relied on all of the authorities of the Act, including 33 U.S.C. § 1319(c), when it promulgated this regulation. *See* note at end of 40 C.F.R. § 123.27.

the regulation. Rather, the regulation, which was promulgated by Environmental Permit Regulations, 48 Fed. Reg. 14146 (Apr. 1, 1983), was superseded when Congress amended the CWA in 1987. *See* Water Quality Act of 1987, Pub. L. No. 100-4, 101 Stat. 7 (1987). ICL is, thus, challenging EPA's *reliance* on a superseded regulation to approve IPDES.

EPA cannot rely on a regulation that was superseded by statute. *See J.L. v. Cissna*, 374 F. Supp. 3d 855, 866 (N.D. Cal. 2019) (agency's "continued reliance on outdated regulations is plainly unreasonable"). In *Baker v. U.S. Dept. of Agriculture*, 928 F. Supp. 1513 (D. Idaho 1996), the court held that where a NEPA regulation was superseded by later statute, the congressional mandate must be carried out. "This mandate of Congress does not step aside for an agency regulation now badly outdated." *Baker*, 928 F. Supp. at 1521.

Here, Congress's mandate is clear. Congress amended the CWA in 1987, replacing the "willful or negligent" standard with two standards: "negligence" for misdemeanor violations, and "knowing" for felonies. *See* ICL Opening Br. 20–22. This Court interpreted that 1987 amendment negligence standard to mean ordinary negligence. *United States v. Hanousek*, 176 F.3d 1116, 1121 (9th Cir. 1999).

Yet, instead of requiring ordinary negligence, Idaho requires criminal negligence, which is stricter. EPA's reliance on the superseded CWA regulations

ICL REPLY BRIEF -- 13

to approve IDPES's heightened *mens rea* standard was thus contrary to law, requiring reversal.

**B.     EPA's New Interpretation of 40 C.F.R. §§ 123.27(a)(3) and (b) is Arbitrary and Capricious.**

Even if the Court considers the superseded regulation, EPA's interpretation of it is unreasonable. Through the IPDES review process, EPA staked out a firm interpretation of the *mens rea* requirement for criminal violations: ordinary negligence. *See* ER 73, 75-76. Ultimately, EPA flipped, adopting the state's self-serving interpretation of 40 C.F.R. § 123.27(a)(3)(ii). EPA argues its new interpretation of 40 C.F.R. § 123.27(a)(3)(ii) and (b) is based on sound rules of statutory construction. EPA Br. 32. The interpretation is not.

When interpreting a regulation, a reviewing court must "carefully consider the text, structure, history, and purpose of the regulation." *Kisor v. Wilke*, 139 S. Ct. 2400, 2405 (2019). The text of 40 C.F.R. § 123.27 does not support EPA's last-minute and novel interpretation to approve IPDES. Although EPA argues that the regulation is ambiguous, EPA Br. 31, 34, the text of 40 C.F.R. § 123.27(b) is clear—state *mens rea* standards cannot be less strict than federal standards:

> The burden of proof and degree of knowledge or intent required under State law for establishing violations under paragraph (a)(3) of this section, *shall be no greater than* the burden of proof or degree of knowledge or intent EPA must provide when it brings an action under the appropriate Act.

40 C.F.R. § 123.27(b) (emphasis added). EPA can only bring criminal enforcement actions under 33 U.S.C. § 1319(c), and the "degree of knowledge or intent" required for EPA to prove a misdemeanor violation of that section is ordinary negligence. *Hanousek*, 176 F.3d at 1121. Thus, under the clear language of 40 C.F.R. § 123.27(b), the degree of knowledge or intent to prove a misdemeanor CWA violation in a state NPDES program "shall be no greater than" ordinary negligence. EPA's interpretation runs afoul of the clear text of the regulations.

The reference in 40 C.F.R. § 123.27(b) to (a)(3) worked before the 1987 amendments, but cannot be reconciled with the new statutory language. *See* ICL's Op. Br. 22–24. If EPA's new interpretation of 40 C.F.R. § 123.27(a)(3)(ii) and (b) is correct, subsection (b) becomes meaningless because Idaho's criminal negligence standard carries a burden of proof greater than EPA's, which is contrary to the plain language of subsection (b). Subsection (a)(3) cannot be harmonized with (b) if read in the context of the current criminal provisions of the CWA, 33 U.S.C. § 1319(c)(1), and this Court's interpretation of that section in *Hanousek*.

EPA relies on *Leocal v. Ashcroft*, 543 U.S. 1 (2004), to defend its interpretation of 40 C.F.R. § 123.27(a)(3) and (b). EPA Br. 32. "[W]e must give effect to every word . . .wherever possible." *Ashcroft,* 543 U.S. at 12. First, it is not possible to give effect to every word in (a)(3) because that provision as written in 1984 is inconsistent with 33 U.S.C. § 1319(c) after Congress amended it in 1987.

ICL REPLY BRIEF --                     15

Second, EPA's argument that the "degree of knowledge or intent" refers to a "generic degree of knowledge" renders the requirements of subsection (b) meaningless. *See* EPA Br. 32. If the so-called generic degree of knowledge allows for a weaker state standard, the language of subsection (b) becomes redundant and the Court cannot "give effect to every word" of the regulation.

Next, turning to the purpose and history of the regulation, EPA's interpretation is again unreasonable. The purpose of 40 C.F.R. § 123.27(b) was to set a minimum federal *mens rea* standard. Section 123.27(a)(3)(ii) set that minimum standard until it was changed by the 1987 CWA amendments. Nothing in the regulatory history of 40 C.F.R. § 123.27(a)(3) and (b) supports the notion that its purpose is to allow a weaker standard for state programs than for federal programs.[4]

## C. The Court Should Not Defer to EPA under the New *Auer* Standard.

In *Kisor*, the Supreme Court reformulated the standard of deference established by *Auer v. Robbins*, 519 U.S. 452 (1997), to make clear that reviewing courts should not defer to an agency's interpretation of its regulation unless several

---

[4] EPA misreads the regulatory history. It cites 45 Fed. Reg. at 33,381 to support its "generic degree of knowledge" argument. *See* EPA Br. 32–33. But the cited notice shows that EPA's amendments were focused on the amount of penalties that states must collect, not *mens rea*.

limiting guidelines are first met. *See* 139 S. Ct. at 2414-15. *Kisor* requires that courts take a harder look at the regulation before deferring to the agency. *Id.*

First, *Kisor* stated that deference is due only if, after applying the standard tools of statutory construction, the court finds the regulation to be "genuinely ambiguous." *Id*. at 2414. As argued above, the regulation is not merely ambiguous in the context of the post-1987 amendments, it is wrong. ICL's Opening Br. 22. The Court should not defer to EPA's interpretation of a superseded regulation that is inconsistent with the current CWA.

"Deference in that circumstance would 'permit the agency, under the guise of interpreting a regulation, to create *de* facto a new regulation.'" *Kisor,* 139 S.Ct. at 2415 (*quoting Christensen v. Harris County*, 529 U.S. 576, 588 (2000)). The existing 40 C.F.R. § 123.27(a)(3)(ii) is at odds with the 1987 amendments, and adopting EPA's attempt to shoehorn the old regulation into the new statutory scheme would improperly allow EPA "to create *de facto* a new regulation" to approve substandard state criminal *mens rea* standards. *Id.*

Second, *Kisor* established that *Auer* deference does not usually apply to a changed interpretation of a rule. *Id.* at 2418. Substituting one view for another is exactly what EPA has done here. It long took the position that 40 C.F.R. § 123.27(b) and *Hanousek* required Idaho to adopt an ordinary negligence standard. *See, e.g.,* ER 73, 75-76; ICL's Op. Br. 15–17. EPA flipped on that prior

interpretation for the first time in its Response to Comments, and agreed to a

broader reading of the regulation advocated by Idaho to allow a weaker state *mens*

*rea* standard.

Finally, the Supreme Court stated in *Kisor* that even if a regulation is

ambiguous, the agency's reading must be reasonable. 139 S.Ct. at 2415. "[T]he

agency's reading must fall 'within the bounds of reasonable interpretation.' And let

there be no mistake: That is a requirement an agency can fail." *Id.* at 2416 (quoting

*Arlington v. FCC*, 569 U.S. 290, 296 (2013)). Again, it is not reasonable for an

agency to rely on a superseded regulation, *see J.L.*, 374 F. Supp. 3d at 866; *Baker*,

928 F. Supp. at 1521. It is equally unreasonable to interpret a regulation for years

as requiring an ordinary negligence *mens rea* standard, then flip at the eleventh

hour in approving a state program, like IPDES. Accordingly, the Court should not

defer to EPA's new interpretation of its regulation, and hold that EPA erred in

approving the IPDES program with an inadequate *mens rea* standard.

## III. THE IDAHO STATUTE OF LIMITATIONS DOES NOT MEET THE ADEQUACY REQUIREMENT OF THE CWA.

As ICL argued in its opening brief, EPA's approval of the IPDES program

was arbitrary and capricious because Idaho's two-year statute of limitations for

civil and administrative enforcement actions is too short to allow for effective

CWA enforcement, given the two- to five-year inspection cycle for most facilities

and the program's enforcement response procedures. EPA raises three arguments in response, each of which is addressed below.

### A.     ICL Did Not Waive Its Claim.

EPA first argues that ICL waived its objection to the two-year period because it failed to raise the same "argument" presented here during the public comment period. EPA Br. 44-45. EPA portrays this as a waiver issue, when actually it is an issue of exhaustion of administrative remedies. But ICL filed this petition under 33 U.S.C. § 1369(b)(1)(D), which contains no exhaustion requirement, and there is no EPA regulation requiring exhaustion under that section. *See Island Coal Co. v. Bryan*, 937 F.3d 738, 746-47 (6th Cir. 2019). In *American Forest and Paper Ass'n v. EPA*, 137 F.3d 291, 295 (5th Cir. 1998), the court specifically held that 33 U.S.C. § 1369(b)(1) does not require a party to participate in the public comment period to preserve its right to petition under that section of the CWA.

Second, even if issue exhaustion is applied here, it does not require a plaintiff to notify an agency of its precise arguments as EPA contends. *See Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 965, 967-68 (9th Cir. 2006); *Idaho Sporting Cong. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002). Rather, a plaintiff exhausts administrative remedies by "alerting the decision maker to the problem in general terms, rather than using precise legal formulations."

*Rittenhouse*, 305 F.3d at 965. "Claims must be raised with sufficient clarity to allow the decision maker to understand and rule on the issue raised." *Id.* The essential test is whether notice was sufficient to allow the agency to understand the issue and to rectify the alleged violation. *Great Basin,* 456 F.3d at 965, 968; *Rittenhouse*, 305 F.3d at 965-66.

ICL's comment notifying EPA of the inadequate duration of the statute of limitations stated: "EPA is also arbitrary and capricious and is otherwise acting contrary to law in approving Idaho's program where the statute of limitations for civil and criminal violations in Idaho is two years and the federal standard is five." ER 260 (no. 4, first sentence). This explicitly identified Idaho's statute of limitations as the "problem" to which it was objecting, the "issue" it was raising, and the "claim" it intended to assert. It also explicitly identified the *brevity* of the two-year statute of limitations as the problem, and the crux of ICL's potential claim, by comparing that relatively brief limitation period to the longer federal period of five years.

### B.     The Record Shows That the Limitation Period is Too Short for Idaho to Timely Develop Enforcement Cases.

IDEQ intends to inspect facilities every two or five years, followed by numerous pre-enforcement administrative steps that will take time to accomplish, meaning a two-year statute of limitations will cripple its ability to prosecute violations. *See* ER 135-147, 222. EPA complained to IDEQ about this problem,

IDEQ made no changes to the program, and EPA approved the program nonetheless.

EPA asserts that ICL ignored "ample evidence" of extended interactions between EPA and IDEQ regarding this issue. EPA Br. 47–50. But EPA largely cites information that ICL has acknowledged, additional drafts of documents included in ICL's record excerpts, or discussions of criminal case development (which are subject to a different statute of limitations). Administrative discussions resulting in no substantive changes fail to provide evidence of anything other than talk. Idaho never fixed the problem.

EPA points to information in the record documenting EPA's concerns about the adequacy of only adding "1/2 attorney for all [IPDES] enforcement," and IDEQ's response that it is seeking "an additional FTE" from the legislature. *See* SER 92, EPA Br. 47-48. But there is no citation to any record of IDEQ having obtained the additional resources, confirming this was a problem that EPA identified and Idaho did not rectify. EPA also cites IDEQ's statement that it "issues [notices of violation] with a tolling agreement to preserve the ability to enforce if the statute of limitations is approaching." EPA Br. 49, SER 106. While this appears

to affirm the inadequacy of the limitation period, there is no record of how IDEQ could toll it unilaterally, or why a violator would agree to it.[5]

The record does not support EPA's action because it describes an enforcement program that cannot reliably meet the applicable statute of limitations. EPA raised the concerns on the record, and IDEQ did not respond adequately. If EPA had reasons for concluding that the IDEQ responses were adequate, they are not in the record and cannot justify the approval. *Tablada v. Thomas*, 533 F.3d 800, 805 (9th Cir. 2008) ("[w]e conduct this review based solely on the administrative record and determine whether the agency has articulated a rational basis for its decision").

## C. ICL's Challenge Is Inherently Forward-Looking.

EPA also argues that ICL's concern about IDEQ's ability to meet the statute of limitations is "speculative," noting that IDEQ *might* make the short statute of limitations, Idaho courts *might* rule that the limitation period is not triggered until discovery of the violation, and IDEQ *might* discover the violations quickly via self-reporting rather than having to wait until an inspection to discover them. EPA Br.

---

[5] EPA cites IDEQ's statement that other IDEQ programs have two-year statutes of limitations. EPA Br. 49, SER 106–107. But there is no discussion of the relative complexity of cases in these unrelated programs, resources available to IDEQ, procedures and timelines for case development, inspection frequency, or degree to which the statute of limitations may hinder enforcement in those programs.

51–54. But characterizing the forward-looking inquiry required of EPA in reviewing a state program as "speculative" does not somehow rectify these defects in the IPDES program that EPA itself identified during the review process.

The review, evaluation, and approval of an NPDES program that has not yet been implemented is inherently forward-looking because the exercise demanded by the CWA is to determine whether adequate authority exists to perform nine enumerated functions *in the future. See* 33 U.S.C. § 1342(b). This *requires* evaluation of potential future scenarios and predictions of how the proposed program would be able to handle them.

The record provides no rational basis for EPA to conclude that Idaho resolved EPA's concerns that the IPDES program could not reliably result in timely enforcement, given the short limitation period, the long inspection cycle, and the multiple pre-enforcement procedural steps described in the record.

### D. EPA Misinterprets the Trigger Date for Enforcement.

Both EPA and Idaho make arguments regarding the date on which the statute of limitations begins to run. EPA Br. 51, 53–54; Idaho Br. 38–39. They concede that, by its language, the limitation period begins when IDEQ "had knowledge or ought reasonably to have had knowledge of the violation." EPA Br. 51; Idaho Br. 38. ICL argues that threshold would be triggered under Idaho law

when "the means of knowledge were open to them," ICL Op. Br. 29–30, c*iting Nancy Lee Mines, Inc. v. Harrison*, 511 P.2d 828, 829 (1973).

EPA responds that "IDEQ made clear in its submission that this statute of limitations is *typically* triggered by knowledge gained through inspection or report of a violation, SER 107, not the occurrence of a violation for which IDEQ had no notice." EPA Br. 51 (emphasis added). Idaho correctly quotes the triggering language in the statute of limitations, but then ignores the "ought reasonably to have had knowledge" prong, asserting incorrectly and without authority that the time period begins to run only upon "discovery of a violation during the inspection." Idaho Br. 38–39. Given a two-year statute of limitations, nothing in either brief or the record suggests that, under Idaho law, IDEQ could defer the triggering of the limitation period simply by choosing to "see no evil," and adopting inspection cycles as long, or longer than, the limitation period itself. While Idaho courts have not interpreted the "ought reasonably to have had knowledge" language in this particular statute, they have ruled on nearly identical language and concluded that it is triggered when "the means of knowledge were open to them." *See* ICL Op. Br. 29–30; *Nancy Lee*, 511 P.2d at 829.

The administrative record thus provides no rational basis for EPA to conclude that Idaho had resolved EPA's concerns that the IPDES program could not reliably result in timely enforcement, given the short limitation period, the long

inspection cycle, and the multiple pre-enforcement procedural steps described in the administrative record. The Court should thus grant ICL's Petition of Review and reverse and remand on this point of error.

## IV. EPA WRONGLY APPROVED IDEQ TO RUN THE CAFO PROGRAM.

Finally, EPA argues that because IDEQ has the requisite authority to run the CAFO program in Idaho, EPA need show no more to approve IDPES. EPA Br. 54–60.[6] Idaho spends several pages describing the authority granted to IDEQ to regulate CAFOs. Idaho Br. 44–49. But those arguments sidestep the requirements that the state must prove that it has both the authority *and* the resources to run an NPDES program. *See*, *e.g.*, 40 C.F.R. § 123.22(b)(1) to (3).

The state agency charged with running the IDPES program, IDEQ, does not have the resources to oversee CAFOs in Idaho and hence cannot exercise its CWA authority over CAFOs. The IPDES program development documents submitted to and reviewed by EPA show *zero* IDEQ FTEs devoted to CAFO regulation in Idaho. ICL Op. Br. 34; ER 28–30, 147. In response, EPA incorrectly asserts that ICL did not cite the 2017 Program Description, but we did. *See* ICL Op. Br. at 34

---

[6] EPA also argues that ICL "waived" this argument, again ignoring that issue exhaustion is not required here. Anyway, ICL's comments noted that "Idaho has proposed to allow [ISDA] take the lead on CAFO enforcement even though it will not be part of the authorized program," ER 260 (no. 5), thus putting EPA on notice of the issue.

(citing ER 147). EPA then argues that IDEQ does indeed have the resources to regulate CAFOs, stating that "approximately seven FTEs assigned to permitting, including any permitting of CAFOs . . ." EPA Br. at 57 (citing to SER 109). That record cite, however, makes no mention of CAFOs and is contradicted by Appendix G of the same document, which makes clear that IDEQ plans no CAFO inspections. ER 147. Nothing cited in EPA's or the State's brief contradicts the information set out in ICL's Op. Brief.

If Idaho wants ISDA to regulate CAFOs in Idaho under the CWA, it must apply for program sub-authorization under 33 U.S.C. § 1342(n), so that EPA may make a determination whether the ISDA program meets CWA requirements.[7] Under 40 C.F.R. § 123.22, when seeking authorization to run the NPDES program, states must describe the program they intend to run, including:

> A description (including organization charts) of the organization and structure of the State agency *or agencies which will have responsibility for administering the program*, including the information listed below. If more than one agency is responsible for administration of a program, each agency must have

---

[7] As EPA notes, use of the word "may" in 33 U.S.C. § 1342(n)(3) makes it discretionary, and EPA is therefore not required to authorize ISDA to regulate under the CWA. The issue, however, is not whether EPA has a nondiscretionary duty to approve ISDA, but whether the state properly submitted an application to allow ISDA to regulate CAFOs under the CWA. If it had, 33 U.S.C. § 1342(n)(3) would have given EPA the discretion to deny to the application—hence the use of the word "may." But Idaho never applied for ISDA authorization, and EPA cannot sidestep the congressional intent of § 1342(n) by concluding that ISDA is merely assisting IDEQ.

> *statewide jurisdiction over a class of activities*. The responsibilities of each agency must be delineated, their procedures for coordination set forth, and an agency may be designated as a "lead agency" to facility communications between EPA and the *State agencies having program responsibility*. . .

40 C.F.R. § 123.22(b) (emphasis added). The program description Idaho submitted to EPA assumes only IDEQ will have CWA authority in the state, and it contains none of the required program information for ISDA.

The regulation is clear that if another state agency involved, it must have "statewide jurisdiction" under the CWA. Here, ISDA has no jurisdiction under the CWA. The regulation is also clear that if there are other agencies with "program responsibilit[ies]," they must disclose them to EPA. "[P]rogram responsibility" means authority to regulate under the CWA. Here, IDEQ described a relationship with ISDA that, on its face, involves no CWA responsibilities, implying that IDEQ would regulate CAFOs in Idaho. Yet the record shows that IDEQ devotes no FTEs to CAFO work, and ISDA will be doing most, if not all, of the day-to-day work overseeing CAFOs in Idaho. The Court should thus rule for ICL on this third error in EPA's approval of the IPDES program.

## CONCLUSION

For the foregoing reasons, the Court should rule that EPA violated the CWA and APA in the three ways identified above when it approved the IPDES program, and remand without vacatur for EPA to remedy those errors within two years.

ICL REPLY BRIEF --      27

DATED: November 20, 2019

Respectfully submitted,

*/s/ Mark A. Ryan*
Mark A. Ryan (WSBA # 18279)
RYAN & KUEHLER PLLC,
P.O. Box 3059
Winthrop, Washington 98862
(509) 996-2617 (office)
(509) 557-5447 (mobile)
mr@ryankuehler.com

Keith Cohon (WSBA #15103)
6210 Sycamore Ave.
Seattle, Washington 98107
(206) 783-4772
cohon.keith@comcast.net

Laurence ("Laird") J. Lucas (ISB #4733)
Bryan Hurlbutt (ISC # 8501)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)
bhurlbutt@advocateswest.org
llucas@advocateswest.org

*Attorneys for ICL*
*Idaho Conservation League*

ICL REPLY BRIEF --                    28

**CERTIFICATE OF COMPLIANCE**

**9th Cir. Case Number:** 18-72684

Pursuant to Red. R. App. P. 32(a)(7)(C), I certify that:

This brief contains 6,483 words, excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1(a).


**Signature**     s/ Mark A. Ryan

**Date**          November 20, 2019

**CERTIFICATE OF SERVICE**

     I hereby certify that the foregoing IDAHO CONSERVATION LEAGUE'S REPLY BRIEF was filed with the Clerk this 20th day of November 2019, via ECF.


                                  */s/ Mark A. Ryan*
                                    Mark A. Ryan